UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————

No. 14-cv-1308 (RJS)
———————————————

PLAYTEX PRODUCTS, LLC AND EVEREADY BATTERY COMPANY, INC.,

Plaintiffs.

VERSUS

MUNCHKIN, INC.,

Defendant.
———————————————

OPINION AND ORDER
March 29, 2016
———————————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Playtex Products, LLC ("Playtex"), a manufacturer and seller of diaper pails and diaper pail refills, and its parent company Eveready Battery Co. ("Eveready") bring this false advertising action under Section 43(a) of the Lanham Act and Section 350 of the New York General Business Law ("NYGBL") against Defendant Munchkin, Inc. ("Munchkin"). Now before the Court are (i) Defendant's motion for summary judgment, (ii) Plaintiffs' motion for partial summary judgment, (iii) Defendant's motion to exclude the expert report and testimony of Plaintiffs' expert Dr. Ravi Dhar, and (iv) the parties' joint sealing motion. For the reasons stated below, the motions are granted in part and denied in part.

I. BACKGROUND

A. Facts

Playtex manufactures and sells the Diaper Genie, a diaper pail designed to provide in-home disposal of soiled diapers.[1]

---

[1] The following facts are generally taken from the parties' Local Civil Rule 56.1 Statements (Doc. No. 93 ("Pls. 56.1"); Doc. No. 102 ("Def. 56.1"); Doc. No. 114 ("Def. 56.1 Counter I"); Doc. No. 119 ("Pls. 56.1 Counter"); Doc. No. 127 ("Def. 56.1 Counter II")), the affidavits and declarations submitted in connection with the instant motions, and the exhibits attached thereto. Unless otherwise noted, where one party's 56.1 Statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding the present motions, the Court also considers Plaintiffs' memorandum of law in support of its motion for partial summary judgment (Doc. No.

(Pls. 56.1 ¶¶ 1–2.) The Diaper Genie is currently sold in three varieties: Diaper Genie Elite (previously sold as Diaper Genie II Elite), Diaper Genie Essentials (previously sold as Diaper Genie II), and Diaper Genie Mini. (*Id.* ¶ 3; Def. 56.1 ¶ 5.) To operate the Diaper Genie, a consumer opens the lid of the device and pushes a soiled diaper through a clamp, which, once closed, safely contains and seals the odor from the diaper. (Pls. 56.1 ¶¶ 7–11.) The soiled diapers are contained in a large expandable film bag, which extends from a plastic, ring-shaped refill cassette. (*Id.* ¶ 12; Def. 56.1 ¶ 1.) While a consumer may need to purchase only one Diaper Genie, that consumer likely will need to buy many refills during the life of the pail. (Pls. 56.1 ¶ 21.)

Playtex sells Diaper Genie refill cartridges under its own branded name ("Playtex Refills"), and, starting in early 2013, Munchkin began selling its own brand of refill cartridges designed to fit Playtex's Diaper Genie under the brand name "Nursery Fresh" ("Nursery Fresh Refills"). (*Id.* ¶ 25; Def. 56.1 ¶¶ 1–2.) Playtex and Munchkin produce the "vast majority of refills" for the Diaper Genie. (Pls. 56.1 ¶ 6.) At all times relevant to this litigation, Munchkin's packaging plainly stated that the Nursery Fresh Refills "fit[]" certain models of the Diaper Genie and that the Nursery Fresh Refills "compare to" Playtex's Refills. (*Id.* ¶ 33; Def. 56.1 ¶¶ 2–3, 6.) In addition, Munchkin's website stated that the Nursery Fresh Refills "fit[]" or "work[] with" the Diaper Genie. (Pls. 56.1 ¶ 35.) Munchkin also told retailers, such as Walmart, that the Nursery Fresh Refills "fit" the Diaper Genie. (*Id.* ¶¶ 36–37.) For purposes of this opinion, the Court will refer to these statements on the packaging, the website, and to retailers as the "Fit Claims." Prior to March 1, 2014, there is no dispute that the Fit Claims were truthful. (Def. 56.1 ¶¶ 4, 6.)

Munchkin also produced advertisements related to the number of layers of plastic film that the Nursery Fresh Refills contain. In particular, Munchkin's website prominently displayed a chart comparing the thickness of the two brands and stated that the Nursery Fresh Refills contained "7-layer film on bags," while the Playtex Refills had only a "5-layer film on bags" (the "Comparison Chart"). (Def. 56.1 ¶ 45; Pls. 56.1 ¶¶ 76–77, 79.) In addition, Munchkin advertised on its website that the Nursery Fresh Refills had a "thicker, seven-layer film to keep everything contained" (the "Thicker Claim," and together, with the Comparison Chart, the "Thickness Claims"). (Pls. 56.1 ¶ 94; Doc. No. 73 ("Third Amended Complaint" or "TAC") ¶¶ 41, 47.)

Starting in the fall of 2013, Playtex began redesigning the product. (Pls. 56.1 ¶ 45; Def. 56.1 ¶ 11.) Before launching the redesigned Diaper Genies (the "Redesigned Diaper Genie"), Playtex notified Munchkin

---

90 ("Pls. Mem.")); Defendant's memorandum of law in support of its motion for summary judgment (Doc. No. 100 ("Def. Mem.")); Defendant's opposition to Plaintiffs' motion for partial summary judgment (Doc. No. 112 ("Def. Opp.")); Plaintiffs' opposition to Defendant's motion for summary judgment (Doc. No. 118 ("Pls. Opp.")); Defendant's reply to its motion for summary judgment (Doc. No. 125 ("Def. Reply")); Plaintiffs' reply to its motion for partial summary judgment (Doc. No. 128 ("Pls. Reply")); Defendant's memorandum of law in support of its motion to exclude the expert report and testimony of Dr. Ravi Dhar (Doc. No. 96 ("Def. Exclude Mem.")); Plaintiffs' opposition to Defendant's motion to exclude (Doc. No. 116 ("Pls. Exclude Opp.")); Defendant's reply in support of its motion to exclude (Doc. No. 124 ("Def. Exclude Reply")); Plaintiffs' memorandum of law in support of sealing (Doc. No. 107 ("Pls. Sealing Mem.")); and Defendant's memorandum of law in support of sealing (Doc. No. 109 ("Def. Sealing Mem.")).

that the Nursery Fresh refills would not fit the Redesigned Diaper Genies. (Pls. 56.1 ¶ 47.) Around March 2014, Playtex began selling the Redesigned Diaper Genies. (Def. 56.1 Counter I ¶¶ 45–46; Pls. Counter ¶ 12; Supplemental Declaration of R. Cameron Garrison, dated July 31, 2015, Doc. No. 113, ("Garrison Suppl. Decl.") Ex. NN.)

In light of the launch of the Redesigned Diaper Genies, Munchkin informed Playtex that, beginning on March 17, 2014, it would place on its Nursery Fresh Refills packaging an orange sticker that stated:

> FIT GUARANTEED: Guaranteed to fit all Diaper Genie® II and Diaper Genie® II Elite pails, and guaranteed to fill all Diaper Genie® Essentials and Diaper Genie® Elite pails purchased prior to March 1, 2014. New and improved Nursery Fresh™ refills will be coming out soon to fit the new Diaper Genie® Essentials and Elite pails.

(Def. 56.1 ¶¶ 20–21; Pls. 56.1 ¶ 55.) Munchkin also stated that it would ask retailers to place the same sticker on the packaging of products currently in inventory. Also in March 2014, Munchkin revised its website to state that the Nursery Fresh Refills are "GUARANTEED TO FIT all Diaper Genie II Elite and Diaper Genie II pails, and guaranteed to fit all Diaper Genie Essentials and Diaper Genie Elite pails purchased prior to March 1, 2014" (together, with the sticker, the "Fit Disclaimer"). (Def. 56.1 ¶ 19–20; Pls. 56.1 ¶ 56.) In addition, Munchkin directed retailers to revise the online product description of the Nursery Fresh Refills to contain this language. (Pls. 56.1 ¶ 57.)

In December 2014, Munchkin began selling redesigned Nursery Fresh refills that indisputably fit all Diaper Genies, including the Redesigned Diaper Genies (the "Redesigned Nursery Fresh Refills"). (Pls. 56.1 ¶ 50; Def. 56.1 ¶ 27.) The Redesigned Nursery Fresh Refills packaging stated that they "fit[] ALL Diaper Genie Elite, Diaper Genie Essentials & 'Mini' Pails." (Pls. 56.1 ¶ 62.)

B. Procedural History

On February 27, 2014, Playtex filed its original complaint in this action, asserting false advertising claims under the Lanham Act and NYGBL. (Doc. No. 2.) On August 14, 2014, Playtex amended its complaint, adding Eveready as a second Plaintiff and asserting additional claims for trademark infringement and trademark dilution. (Doc. No. 41.) On September 3, 2014, Defendant asserted counterclaims, (i) alleging false advertising claims under federal and state law based on Plaintiffs' advertisement that stated that only Playtex Refills would fit the Redesigned Diaper Genies, and (ii) seeking a declaratory judgment that the Diaper Genie trademark had become generic. (Doc. No. 46.) Subsequently, on May 22, 2015, Plaintiffs filed a Third Amended Complaint and voluntarily withdrew their trademark infringement claims, and, on June 3, 2015, Defendant withdrew its counterclaim for declaratory relief on the Diaper Genie trademark. (Doc. Nos. 73, 74.)

On July 2, 2015, Defendant filed a motion for summary judgment as to all of Plaintiffs' claims, and Plaintiffs filed a partial motion for summary judgment on their Lanham Act claim. (Doc. Nos. 83, 88.) On the same day, Defendant also filed a motion to exclude the expert report and testimony of Plaintiffs' expert Dr. Ravi Dhar. (Doc. No. 85.) On July 17, 2015, both parties filed a motion to seal certain documents submitted in the summary judgment briefing. (Doc. Nos. 105, 108.)

3

All five motions were fully briefed by August 11, 2015.

## II. FALSE ADVERTISING CLAIMS

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Section 43(a) of the Lanham Act prohibits an individual from using in commercial advertising any false or misleading description of fact which "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995). To prevail on a claim for false advertising, a plaintiff must prove the following elements: (1) "the challenged advertisement is false"; (2) the misrepresentation was material because it relates to "an inherent quality or characteristic of the product" and, therefore, affects a consumer's purchasing decision; (3) "the defendant placed the false or misleading statement in interstate commerce"; and (4) the plaintiff has been injured by the misrepresentation, "either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (internal quotation marks omitted); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 n.3 (2d Cir. 2007). Because these

4

elements are "substantially similar to the standards applicable to claims under the New York deceptive trade practices statute," the Court analyzes the federal and state claims together. *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410 n.6 (S.D.N.Y. 2006); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (noting that, to assert a claim for false advertising under New York law, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice" (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012))).[2]

To satisfy the first element of falsity, a plaintiff must demonstrate that the challenged advertisement is (i) "literally false" or (ii) impliedly false such that "while not literally false, [it] is nevertheless likely to mislead or confuse customers." *Time Warner Cable*, 497 F.3d at 153. To be literally false, an advertisement must be "false on its face" or false by necessary implication. *Id.* at 153, 158; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586–87 (3d Cir. 2002) ("A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." (internal quotation marks omitted)). An advertisement is false by necessary implication if "the words or images, considered in context, necessarily imply a false message." *Time Warner Cable*, 497 F.3d at 158; *see also Tiffany (NJ) Inc. v. eBay, Inc.*, No. 04-cv-4607 (RJS), 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) ("This common-sense doctrine allows a court to conclude that, while no individual statement in an advertisement is false, taken as a whole, the advertisement necessarily implies a falsehood."). When an advertisement is false on its face or false by necessary implication, a court may grant relief "without reference to the advertisement's actual impact on the buying public" because consumer confusion is presumed. *Time Warner Cable*, 497 F.3d at 153 (internal quotation marks and alterations omitted); *see also Merck Eprova*, 760 F.3d at 256. However, "only an *unambiguous* message" may be literally false or false by necessary implication. *Time Warner Cable*, 497 F.3d at 158. As a result, "if the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id.*

By contrast, if an advertisement is impliedly false, a court generally "must rely on extrinsic evidence of consumer deception or confusion to support a finding of an implicitly false message." *Id.* at 153 (brackets omitted). Indeed, the "success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey

---

[2] Even though Plaintiffs seek summary judgment on only their federal false advertising claim in Count One, the Court considers Plaintiffs' federal and state false advertising claims together since their analyses overlap. Accordingly, to the extent the Court grants Plaintiffs' motion for summary judgment as to the federal claim in Count One, the Court will also grant summary judgment as to Plaintiffs' state law false adverting claim in Count Two. *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 119 (2d Cir. 1999) (noting that "district courts have the inherent power to grant summary judgment *sua sponte*," as long as "the losing party had notice that it had to come forward with all of its evidence and arguments"); *see also Biosafe-One, Inc. v. Hawks*, 379 F. App'x 4, 8–9 (2d Cir. 2010) (noting that district courts "are widely acknowledged to possess the power to enter summary judgment *sua sponte*" and that district courts may do so without notice as long as "the lack of notice causes no prejudice" (internal quotation marks omitted)).

5

that shows that a substantial percentage of consumers are taking away the message that the plaintiff contends the advertising is conveying." *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 345 (S.D.N.Y. 2008) (internal quotation marks omitted). "Cases have held that 20% constitutes a substantial percentage of consumers." *Id.* However, in implied falsity cases, if a plaintiff demonstrates that a defendant "has intentionally set out to deceive the public" through "deliberate conduct" that is "egregious in nature," extrinsic evidence is not required because there is a presumption of consumer deception. *Merck Eprova*, 760 F.3d at 256 (internal quotation marks omitted). "In such a case, once a plaintiff establishes deceptive intent, the burden shifts to the defendant to demonstrate the absence of consumer confusion." *Id.* (internal quotation marks omitted).

Here, Plaintiffs move for summary judgment on the Fit Claims and the Thickness Claims, arguing that both were literally false. Plaintiffs also assert, in the alternative, that the Fit Claims are impliedly false. For its part, Defendant moves for summary judgment on all claims, arguing that the Fit Claims and the Thickness Claims were neither literally nor impliedly false. Defendant also argues that, in the event the Court even reaches consumer deception, Plaintiffs' claim must be dismissed since Dr. Dhar's survey is inadmissible and Plaintiffs have offered no other evidence of intentional deception or consumer confusion. The Court will address each argument in turn.

### A. Fit Claims

#### 1. Literal Falsity

Plaintiffs argue that the Fit Claims were literally false because they failed to disclose that the Nursery Fresh Refills would not fit the Redesigned Diaper Genies. Specifically, Plaintiffs assert that once they released the Redesigned Diaper Genie on March 1, 2014, the Fit Claims were literally false because they falsely stated that the Nursery Fresh Refills "fit[]" or "work[] with" all Diaper Genies, even the Redesigned Diaper Genies. It is undisputed that, between March 1, 2014 and March 17, 2014 – the date on which Defendant began placing the Fit Disclaimer on the Nursery Fresh Refills packaging – the claims were literally false because "a majority of the Nursery Fresh Refills" did *not* fit the Redesigned Diaper Genies. (Def. 56.1 Counter I ¶ 44; *see also id.* ¶¶ 63, 66.) It is likewise undisputed that Plaintiffs have established the other three elements of their false advertising claim – namely, that the Fit Claims were material because they related to an inherent quality of the Nursery Fresh Refills, that they were placed on packaging sold in interstate commerce, and that they caused injury to Plaintiffs. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (noting that plaintiff's failure to make "any argument touching on" a specific claim in an opposition to summary judgment constitutes abandonment of the claim); *see also Time Warner Cable*, 497 F.3d at 162 (noting that a "false comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer" and, thus, injury may be presumed (internal quotation marks omitted)). Consequently, the Court grants Plaintiffs' motion for summary judgment with respect to Defendant's liability on the literal falsity of the Fit Claims between March 1, 2014 and March 17, 2014.

It is also undisputed that, starting in December 2014, Munchkin began selling the Redesigned Nursery Fresh Refills, which truthfully advertised that they fit *all* Diaper

Genies, even the Redesigned Diaper Genies. (Pls. 56.1 ¶ 50; Def. 56.1 ¶ 27.) Therefore, the Court grants Defendant's motion for summary judgment as to Plaintiffs' literally false Fit Claims claim after December 1, 2014. Accordingly, the Court now focuses on the time period between March 17, 2014 and December 1, 2014, during which Defendant placed the Fit Disclaimer on the refills and its website.

Plaintiffs argue that the Fit Disclaimer "did not alleviate the false [Fit Claims] in any way." (Pls. Mem. at 18.) Defendant, by contrast, argues that, as a whole, the packaging was not literally false and was, at worst, ambiguous. Because "only an *unambiguous* message can be literally false," *Time Warner Cable*, 497 F.3d at 158, Defendant asserts that the Nursery Fresh Refills packaging did not contain literally false claims for the time period between March 17, 2014 and December 1, 2014. The Court agrees with Defendant.

A claim cannot be literally false if it is susceptible to at least two interpretations. *See id.* ("[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."); *see also Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385 (2d Cir. 1986) (noting that when considering a literally false claim, a court must "consider the advertisement in its entirety" and not "engage in disputatious dissection" because "[t]he entire mosaic should be viewed rather than each tile separately"). When considering the Nursery Fresh Refills packaging as a whole – that is, the Fit Claims along with the Fit Disclaimer – the Court finds that the packaging is susceptible to multiple interpretations that necessarily preclude a finding of literal falsity. On the one hand, it would not be unreasonable for a consumer to read the Fit Disclaimer as a mere guarantee that the Nursery Fresh Refills fit Diaper Genie pails manufactured before March 1, 2014 and not as an acknowledgement that the refills do not fit pails produced after that date. (Pls. Opp. at 13, 15, 18.) On the other hand, an alternate, and candidly more plausible, reading of the Fit Disclaimer is that the Nursery Fresh Refills will not fit Diaper Genie pails manufactured after March 1, 2014. (Def. Mem. at 11-12.) Indeed, the inference that refills do not fit pails purchased after March 1, 2014 flows naturally from the Fit Disclaimer's statement that the refills are "guaranteed" to fit "pails purchased prior to March 1, 2014," especially when the Fit Disclaimer is read as a whole, since the very next sentence states that "[n]ew and improved Nursery Fresh™ refills will be coming out soon to fit all the new Diaper Genie® Essentials and Elite Pails," further suggesting that the current Nursery Fresh Refills do not fit these pails. (Def. 56.1 ¶¶ 20–21; Pls. 56.1 ¶ 55.) Even Plaintiffs' expert, Dr. Dhar, recognized the ambiguity of the Nursery Fresh Refills packaging and stated that he "did not know what people take away from the fit guaranteed" claim. (Declaration of R. Cameron Garrison, dated July 2, 2015, Doc. No. 101 ("Garrison Decl."), Ex. O ("Dhar Dep.") at 71:13–18.)

Therefore, because the Court finds that the Nursery Fresh Refills packaging is ambiguous and susceptible to at least two reasonable interpretations, the Court must reject Plaintiffs' literal falsity theory with respect to the Fit Claims between March 17, 2014 and December 1, 2014.[3]

---

[3] In so far as Plaintiffs seek to hold Defendant liable for pails sold after March 17, 2014 *without* the Fit Disclaimer, they do not include this argument in their motion, although they note in their Rule 56.1 statement that "[u]nmarked Nursery Fresh inventory was available for purchase in some retailers through December 2014." (Pls. 56.1 ¶ 61). Since neither

7

2. Implied Falsity

Plaintiffs argue in the alternative that Defendant's Fit Claims were impliedly false. To support their implied falsity claim, Plaintiffs ask the Court to presume consumer deception based on Munchkin's alleged intentional deception of the public. In addition, Plaintiffs rely on Dr. Dhar's testimony and expert report as extrinsic evidence of the falsity of Defendant's Fit Claims. Defendant moves for summary judgment on Plaintiffs' implied falsity claim, arguing that consumer deception should not be presumed and that the only extrinsic evidence offered by Plaintiffs – Dr. Dhar's report – is inadmissible pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

a. Presumption of Consumer Deception

As stated above, a presumption of consumer deception arises if a plaintiff demonstrates that a defendant "has intentionally set out to deceive the public" through "deliberate conduct" that is "egregious in nature." *Merck Eprova*, 760 F.3d at 256 (internal quotation marks omitted). Here, Plaintiffs argue that such consumer deception should be presumed because Defendant continued to sell the Nursery Fresh Refills, "yet affirmatively declined to withdraw the [Fit Claims] or clarify" them. (Pls. Mem. at 18.) However, the record fails to support a finding that Defendant "intentionally set out to deceive the public" through "deliberate" and "egregious" conduct. *Johnson & Johnson \* Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294,

---

party addresses this issue in their briefing, the Court's summary judgment ruling does not extend to pails sold after March 17, 2014 that did not have the Fit Disclaimer.

---

298 (2d Cir. 1992). Here, Defendant took several steps to clarify the allegedly false Fit Claims, including by adding the Fit Disclaimer to the Nursery Fresh Refills packaging, directing retailers to add this sticker to inventory already in stores, and updating its website with this disclaimer. (Def. 56.1 ¶¶ 21–22; Pls. 56.1 ¶ 56.) Indeed, Munchkin CEO Steven Dunn stated that the goal of placing the Fit Disclaimer on the Nursery Fresh Refills packaging was to "effectively communicate that Munchkin's cartridges fit Diaper Genie pails sold prior to March 1st." (Garrison Decl., Ex. L, at 95:1–96:8.) In light of Defendant's actions and Plaintiffs' failure to identify any evidence suggesting intentional deception, the Court finds that no rational jury could conclude that Defendant acted intentionally, much less "egregiously," to deceive the public and, thus, declines to apply a presumption of consumer deception. *See Tiffany*, 2010 WL 3733894, at *4 (declining to find a presumption of consumer deception where "nothing in the record indicates that [defendant] was aware that consumers were being misled by [defendant's] advertisement" and where defendant's attempt to correct allegedly false statements demonstrated "a desire to educate and protect consumers, rather than to dupe them").

b. Extrinsic Evidence from Dr. Dhar

In order to support their implied falsity claim and demonstrate consumer deception, Plaintiffs must thus rely on extrinsic evidence. However, the only extrinsic evidence they identify is Dr. Dhar's testimony and report, which Defendant moves to exclude as inadmissible. For the reasons set forth below, the Court agrees with Defendant that Dr. Dhar's testimony and report must be excluded. Accordingly, the Court also grants Defendant's motion for

8

summary judgment on Plaintiffs' theory of implied falsity.

When evaluating a motion for summary judgment, a district court may determine the admissibility of evidence, including expert opinion testimony and expert reports, because, on such a motion, a court considers "only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998); *see also Solorio v. Asplundh Tree Expert Co.*, No. 02-cv-8035 (RJS), 2009 WL 755362, at *1 (S.D.N.Y. Mar. 23, 2009). Rule 702 of the Federal Rules of Evidence permits expert testimony if, among other factors, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court has held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Daubert*, 509 U.S. at 597 (emphasis added). This "gatekeeping" function applies to scientific expert testimony as well as to technical and other specialized fields of knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48 (1999). The burden is thus on Plaintiff to prove by a preponderance of the evidence that Dr. Dhar's testimony is admissible. *See United States v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007) ("[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."); *see also Daubert*, 509 U.S. at 592 n.10 ("These matters should be established by a preponderance of proof.").

In general, expert survey evidence is admissible to assess likelihood of confusion as long as it "possesses sufficient circumstantial guarantees of trustworthiness" and is relevant to the litigation. *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 297 (2d Cir. 1999) (internal quotation marks omitted). Courts consider a variety of factors when evaluating the admissibility of a survey, including whether the survey was "properly designed and objectively and fairly conducted," replicated marketplace conditions, and contained "questions [that] are directed to the real issues." *Procter & Gamble*, 574 F. Supp. 2d at 345–46; *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007). In addition, in a false advertising action, survey questions should assess whether "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement." *Johnson & Johnson*, 960 F.2d at 298; *see also Procter & Gamble*, 574 F. Supp. 2d at 345 ("[T]he success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey that shows that a substantial percentage of consumers are taking away the message that the plaintiff contends the advertising is conveying." (internal quotation marks omitted)). However, because "errors in survey methodology usually go to [the] weight of the evidence," which can be assessed by a jury, "a survey should be excluded" as irrelevant only "when its probative value is substantially outweighed by its prejudicial effect or potential to mislead the jury." *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02-cv-3691 (DLC), 2004 WL 326708, at *7 (S.D.N.Y. Feb. 23, 2004).

Here, Plaintiffs retained Dr. Dhar in January 2015 to conduct a survey of 406 women, aged 18 years and older, who currently owned a Diaper Genie or planned to purchase one in the next six months, to determine "the extent to which relevant

9

consumers took away an understanding that these Nursery Fresh refills fit all Diaper Genie branded pails, regardless of when they were purchased." (Declaration of R. Cameron Garrison, dated July 2, 2015 ("Garrison Decl. 2"), Doc. No. 97, Ex. A ("Dhar Report") ¶¶ 12, 23–24.) To answer this question, Dr. Dhar divided the women into two groups. The first group, known as the "Test Group," was shown Nursery Fresh Refills packaging with the Fit Claims and Fit Disclaimer. (*Id.* ¶¶ 28, 31–34.) The second group, known as the "Control Group," was shown packaging that was identical to the Test Group, except that the phrase "FIT GUARANTEED" on the Fit Disclaimer was replaced with the phrase "Only Fits Diaper Genie Pails Purchased Before March 1, 2014," and the word "Fits" in the Fits Claim was replaced with the phrase "Only fits Diaper Genie pails purchased before March 1, 2014." (*Id.* ¶ 29; *id.* Ex. F.)

Both groups were taken through the same procedure and asked the same eleven questions. First, respondents in the Test Group and the Control Group were given an opportunity to look at and review the packaging relevant to that group. (Garrison Decl. 2, Exs. D, E.) Next, the packaging was covered and respondents were asked several questions about the packaging, including (i) what was the main idea that the packaging communicated, (ii) whether the packaging conveyed anything about whether the refills would or would not fit in the Diaper Genie, and (iii) whether the packaging conveyed anything about whether the refills would or would not fit in the Diaper Genie purchased before or after a particular date. (*Id.*)

Focusing on the answers to the last question and excluding respondents who answered "don't know" or "no opinion," Dr. Dhar noted that 41.4% of the Test Group stated that the packaging does not communicate anything about whether the refills would or would not fit Diaper Genies purchased before or after a specific date. (Dhar Report, tbl.1.) In contrast, only 20.1% of the Control Group found it did not communicate anything about whether the refills would or would not fit Diaper Genies purchased before or after a specific date. (*Id.*) Once again focusing on the last question but this time including respondents who stated "don't know" or "no opinion," Dr. Dhar reported that only 36.7% of the Test Group answered yes to whether the packaging communicated whether the refills would or would not fit into the Diaper Genie purchased before or after a particular date, whereas 57.7% of the Control Group answered yes to this question. (*Id.* tbl.2.) From these results, Dr. Dhar concluded that "a significant proportion of reasonable consumers" believe that the Nursery Fresh Refills fit the Diaper Genie "regardless of the date on which they were purchased." (Dhar Report ¶ 17.) Plaintiffs intend to use this conclusion to argue at trial that the Fit Claims and Fit Disclaimer were false and misleading because they improperly conveyed that the Nursery Fresh Refills fit Diaper Genies purchased at any time. In response, Defendant argues that Dr. Dhar's testimony and survey are inadmissible because the survey asked irrelevant questions, used an improper control, and failed to replicate marketplace conditions.

With respect to relevance, Defendant argues that Dr. Dhar asked the wrong questions during the survey. Specifically, Defendant argues that the survey reveals nothing about whether the Fit Claims and the Fit Disclaimer conveyed the *false* impression that the Nursery Fresh Refills fit Diaper Genies purchased after March 1,

2014. (Def. Exclude Mem. at 7.) The Court agrees.

Plaintiffs' false advertising claim rests on Plaintiffs' contention that consumers were misled to think that Nursery Fresh Refills would fit pails sold after March 1, 2014 and that the Fit Disclaimer did not fix this problem. However, the survey they seek to introduce offers no indication as to how many, if any, consumers actually interpreted the packaging to convey this message. Significantly, the survey elicited responses on whether the packaging communicated *anything* about whether the refills *would* or *would not* fit Diaper Genies purchased before or after a specific date. By phrasing the question in this way, the survey only evaluated the percentage of respondents who took away the message that there is a date restriction on the fit of the Nursery Fresh Refills without providing any information about consumers who might take away the *false* message that the Nursery Fresh Refills would fit pails purchased after March 1, 2014, which is the relevant issue in this case. (Dhar Report, tbl.1.) At best, the survey showed that the disclaimer presented to the Control Group was better at communicating a date restriction than the Fit Disclaimer. However, the point of using a consumer survey for a claim of implied falsity is not to propose a better disclaimer, but rather to evaluate the extent to which the contested advertisement conveys a false message. Dr. Dhar's survey simply does not indicate whether respondents in the Test Group understood the Fit Disclaimer to falsely state that the Nursery Fresh Refills would fit Diapers Genies purchased after March 1, 2014. As a result, the survey does not demonstrate that "a substantial percentage of consumers are taking away the message that the plaintiff contends the advertising is conveying." *Procter & Gamble Co.*, 574 F. Supp. 2d at 345.

Because the survey offers no insight into whether "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement" – here, that the Nursery Fresh Refills would fit pails purchased after March 1, 2014 – the Court concludes that the survey is irrelevant, *Johnson & Johnson*, 960 F.2d at 298, and would merely confuse a jury rather than "help the trier of fact to understand the evidence or to determine a fact in issue," as required by Federal Rule of Evidence 702. In other words, the Court concludes that the survey's "probative value is substantially outweighed by its . . . potential to mislead the jury." *Mastercard Int'l Inc.*, 2004 WL 326708, at *7. Accordingly, the survey must be excluded as inadmissible. *See Starter Corp.*, 170 F.3d at 297 (finding no abuse of discretion where district court excluded consumer survey finding it "not relevant because it did not test or demonstrate likelihood of consumer confusion"); *see also Malletier*, 525 F. Supp. 2d at 575 (excluding surveys as irrelevant based on flawed methodology).

Therefore, because the Fit Disclaimer is not literally false and Plaintiffs have identified no admissible extrinsic evidence of consumer confusion to support their theory of implied falsity, the Court finds that Defendant is entitled to summary judgment on the Fit Claims, except with respect to Nursery Fresh Refills sold without the Fit Disclaimer between March 1, 2014 and March 17, 2014.

### B. Thickness Claims

Both parties also seek summary judgment on the literal falsity of the Thickness Claims.[4] Plaintiffs assert that the

---

[4] Plaintiffs appear to seek to expand the Thickness Claims by including one other Munchkin advertisement not mentioned in the Third Amended

11

Thicker Claim is literally false based on analytical testing which demonstrated that the Playtex Refills are thicker than the Nursery Fresh Refills. In addition, they assert that the Comparison Chart is literally false both on its face and by necessary implication. Defendant, who brings a cross motion for summary judgment, asserts that the Thickness Claims were immaterial or, in the alternative, that the Comparison Chart is literally true.

With respect to materiality, the Court disagrees with Defendant. Put simply, Defendant chose to highlight the number of layers that the Nursery Fresh Refills had in comparison to the Playtex Refills in the Comparison Chart and the Thicker Claim, obviously in the hope that the advertisements would encourage consumers to purchase the Nursery Fresh Refills instead of the Playtex ones. Accordingly, the Court finds that Plaintiffs have demonstrated that the Thickness Claims were material to a consumer's purchasing decision. *See Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 423 (S.D.N.Y. 2013) ("[T]he Second Circuit has explained that satisfying this materiality requirement depends on whether the alleged inaccuracy in the statements at issue would affect the purchasing decisions of consumers." (internal quotation marks omitted)).

The Court will next address whether either party is entitled to summary judgment based on the literal falsity of the Thickness Claims.

### 1. Thicker Claim

Plaintiffs contend that the Thicker Claim – which asserted that Nursery Fresh Refills are "thicker" than Playtex Refills – is literally false. As proof, Plaintiffs point to (i) an analytical test, performed in the fall of 2013, which determined that the average thickness of the Nursery Fresh Refills was 0.89 thousandths of an inch, while the average thickness of the Playtex Refills was 1.15 thousandths of an inch (Garrison Decl., Ex. BB at 5), and (ii) a June 24, 2014 test, which determined that the Nursery Fresh Refills were thinner than the Playtex Refills (Declaration of Elizabeth Figueira, dated July 2, 2015, Doc. No. 94, Ex. 11, at 1 (Munchkin employee stating that the test "shows our bag is thinner than [Playtex's]")).

To dispute this evidence, Defendant points to the statement of a third-party witness that he "would be cautious in outright stating that one [refill] is thicker than another." (Garrison Suppl. Decl., Ex. II, at 182:21–183:11.) However, it is well established that a party cannot defeat summary judgment with "conclusory allegations or unsubstantiated speculation," *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001), and Defendant identifies no evidence to explain the basis for this witness's caution. Indeed, the same witness even admits that "from the data, if I just look strictly . . . at the data, then . . . there is one that appears to be thicker than the others." (Garrison Suppl. Decl., Ex. II, at 183:1–4.) Accordingly, the

---

Complaint, which stated that the Nursery Fresh Refills had "7-layer bags vs. 5-layer bags for extra odor protection" (the "Odor Protection Claim"). (Pls. Reply at 8.) However, Plaintiffs cannot use their motion for summary judgment to supplement their pleadings. *See Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 223 (S.D.N.Y. 2013) ("To the extent that [Plaintiff] omitted claims from the pleadings, it certainly cannot raise them in its summary judgment brief filed long after discovery has concluded."). Plaintiffs' Thickness Claims are thus limited to the allegations of online advertisements included in the Third Amended Complaint – namely, the Comparison Chart and the Thicker Claims – but not any additional advertisements, including the Odor Protection Claim, that were not mentioned in Plaintiffs' pleadings.

Court finds that Defendant has failed to present any evidence to create a factual dispute.

Nevertheless, Defendant argues that Plaintiffs are not entitled to summary judgment on the Thicker Claim because Plaintiffs have failed to demonstrate any damages related to the false advertising. Specifically, Defendant relies on the deposition testimony of Plaintiffs' damages expert, Dr. Stephen Hoch, who, when asked whether there were any other advertisements aside from the Comparison Chart that "establish the damages as set forth in your report as to the [T]hickness [C]laims," responded, "Not that I'm aware of." (Def. Mem. at 17–18 (quoting Garrison Decl., Ex. R ("Hoch Dep."), at 232:12–17).) However, this statement is of no particular moment since injury may be presumed given the literal falsity of the claim that Nursery Fresh Refills are thicker than Playtex Refills. *See Time Warner Cable*, 497 F.3d at 162 (injury presumed where literally false message "necessarily diminishes that product's value in the minds of the consumer" (internal quotation marks omitted)).

As Defendant identifies no evidence in the record that contradicts or calls into question the results of the tests demonstrating that the Playtex Refills were thicker than the Nursery Fresh Refills, Plaintiffs are entitled to summary judgment as to the literal falsity of the Thicker Claim.

2. Comparison Chart

a. False on its Face

Plaintiffs next urge the Court to find that the Comparison Chart is literally false as a matter of law because, starting in the fall of 2013, the Playtex Refills had more than five layers. However, the record reveals genuine disputes of material fact over whether, and when, Playtex transitioned to seven-layer film.[5]

Plaintiffs identify evidence that, starting in November 15, 2013, all Playtex Refills had seven-layer film. (Pls. 56.1 ¶ 70.) For example, they point to advertisements for the launch of the new Diaper Genie Elite with Carbon Filter in March 2014, which stated that the refill had seven layers (*id.* ¶ 74), and advertisements on their website beginning in April 2014, which stated that the Playtex Refills had seven-layer film (*id.* ¶¶ 71–73). Yet while Plaintiffs claim that the transition to seven layers occurred in November 2013, Defendant cites a different fall 2013 study indicating that the Playtex Refills had just six-layer film at that time. (Garrison Decl., Ex. T; *id.*, Ex. CC, at 169:10–172:6.) Defendant also identifies an internal Playtex document from March 2014 which noted that the artwork on at least some of the Playtex advertisements had not been changed to state that the Playtex Refills had seven-layer film. (Def. 56.1 ¶ 55; Garrison Decl., Ex. Y.) And Playtex's own witness, Jennifer Chin, testified that "[t]he actual change as to when we stopped using five layers can only be known by the manufacturers of the film. They didn't even tell us when they stopped . . . . When we transitioned to seven, I don't know." (Def. 56.1 ¶ 60; Garrison Decl., Ex. V, at 108:10-109:14.) Significantly, Defendant notes that, even as late as July 2015, Plaintiffs still had advertisements stating that the Playtex Refills had only five layers. (Garrison Decl., Ex. Z.)

As a result, the Court finds that there are genuine issues of material fact related to whether and when the Playtex Refills started

---

[5] Plaintiffs no longer claim that the Thickness Claims were impliedly false. (*See* Pls. Opp. at 23.)

13

to have more than five layers. Because these disputes necessarily preclude summary judgment, the Court denies both Defendant's and Plaintiffs' motions for summary judgment with respect to the literal falsity of the Comparison Chart "on its face."

    b. False by Necessary Implication

Alternatively, Plaintiffs argue that the Comparison Chart is literally false by necessary implication because it "unambiguously conveys" that the Nursery Fresh Refills are "thicker" than Playtex's refills, which, as discussed above, is demonstrably false. (Pls. Mem. at 21.) In response, Defendant argues that the Comparison Chart cannot be false by necessary implication because it is ambiguous. (Def. Opp. at 21–22.)

The Court finds that the Comparison Chart is susceptible to more than one interpretation. The plain meaning of the Comparison Chart – which refers to the number of *layers* each refill has, as opposed the *thickness* of the refills – is that the Nursery Fresh Refills have more layers than the Playtex Refills. However, consumers might read several "implications" into this comparison. For example, some consumers might interpret the Comparison Chart as suggesting that Nursery Fresh Refills are thicker, which would be false in light of the uncontradicted testing evidence discussed above. However, consumers might also conclude that the additional layers make the Nursery Fresh Refills stronger or better at containing odors. With respect to the strength of the liners, neither party has offered any evidence to suggest that one refill is stronger than the other. And while Plaintiffs point to testing that shows that Playtex Refills allow less oxygen or water through the film, which "is believed" to correlate with odor retention (TAC ¶ 50),

Playtex's own witnesses were unable to explain this correlation (*see, e.g.*, Garrison Decl., Ex. V, at 28:10-20 ("I've attempted to understand it at one point and I don't understand it . . . my understanding is that there really is no correlation[.]")). As such, there are at least three implied meanings of the Comparison Chart, only one of which is demonstrably false. Given that a consumer may read multiple implications into the Comparison Chart, including that the Nursery Fresh Refills are stronger or better at containing odors, the Court cannot find that the Comparison Chart is literally false by necessary implication. *See Tiffany (NJ) Inc.*, 2010 WL 3733894, at *3 ("A court can only make a finding that an advertisement is false by necessary implication, however, when the message conveyed is unambiguous." (internal quotation marks omitted)). Accordingly, the Court concludes that Plaintiffs may not proceed to trial on their theory that the Comparison Chart is literally false by necessary implication.

### III. Motion to Exclude Dr. Dhar's Testimony

For the reasons stated above, the Court grants Defendant's motion to exclude Dr. Dhar's testimony because it is not relevant to Plaintiffs' false advertising claims.

### IV. Sealing

Finally, the Court addresses the parties' joint request to seal certain commercially sensitive information included in their summary judgment briefing.

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Without access to such documents, it is impossible for the public to perform their

essential role in monitoring judicial proceedings. *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal." *Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08-cv-10367 (PGG), 2009 WL 1025965, at *4 (S.D.N.Y. Apr. 15, 2009).

First, the Court determines whether the relevant document is a "judicial document" – i.e., an "item . . . relevant to the performance of the judicial function and useful in the judicial process" to which the presumption of open records attaches. *Lugosch*, 435 F.3d at 119 (internal quotation marks omitted). Second, if it is a judicial document, the Court must determine the weight of this presumption. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (internal quotation marks omitted). And third, the Court must "balance competing considerations." *Id.* at 120 (internal quotation marks omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* (internal quotation marks omitted). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action . . . ." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Here, Plaintiffs have proposed redactions on a limited number of statements in the briefs and exhibits related to Playtex's (i) sales and revenue, (ii) analytical testing of the Diaper Genie Refills, (iii) qualitative market research, and (iv) research and development for new products. (Pls. Sealing Mem. at 3–4.) As an initial matter, all these statements are in judicial documents that are accorded a presumption of access because they are relevant to the elements of Plaintiffs' false advertising claims, such as the truth or falsity of the allegedly deceptive advertisements and whether the advertisements are misleading to consumers. Nevertheless, the Court agrees with Plaintiffs that all of these statements should be redacted because Plaintiffs would be competitively harmed if they were revealed. (*See* Declaration of Patrick S. Kane, dated July 17, 2015, Doc. No. 106, ¶¶ 10–14 (noting, for example, that disclosure of these documents would give "Playtex's competitors insight into specifics as to the timing, nature, and key players involved in Playtex's product development").) Because Plaintiffs' request is narrowly tailored, and because Plaintiffs' privacy interests and the likely harm they may suffer if this "highly proprietary material" is revealed to their competitors outweigh the presumption of public access, the Court authorizes the sealing of the redacted statements. *See GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649-50 (S.D.N.Y. 2011) (noting that "material concerning the defendants' marketing strategies, product development, costs and budgeting" contain "highly proprietary material" and therefore may remain under seal); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (sealing defendants' "[c]onfidential business information dating back even a decade or more" because they "provide valuable insights into a company's current business practices that a competitor would seek to exploit," including "the cost and profit structures of the defendants" and their marketing strategies).

Defendant also seeks to seal a very narrow portion of its summary judgment

briefing, which references confidential and sensitive business information, including sales and costs information, presentations, merger discussions, and competitive analyses and product testing. (Def. Sealing Mem. at 2, 4.) For the reasons stated above, the Court grants Defendant's sealing request, except to the extent that some of the documents are already on the public record. (*See* Def. Sealing Mem. at 2 (noting that redacted portions of some of its exhibits already appear on the public record).) Accordingly, by April 8, 2016 Defendants must submit updated proposed redactions – which do not include any documents in the public record – whereupon the Court will determine which statements may remain under seal.

V. CONCLUSION

For the reasons set forth above, the Court grants Plaintiffs' motion for partial summary judgment related to liability on the literal falsity of the Fit Claims between March 1, 2014 and March 17, 2014, and on the literal falsity of the Thicker Claim, but denies Plaintiffs' motion in all other respects.

The Court also grants Defendant's motion for summary judgment on the literal falsity and the implied falsity of the Fit Claims for Nursery Fresh Refills with the Fit Disclaimer between March 17, 2014 and December 1, 2014, and on the literal falsity by necessary implication of the Comparison Chart, but denies Defendant's motion in all other respects.

The Court also grants Defendant's motion to exclude Dr. Dhar's expert testimony and report.

Finally, the Court grants Plaintiffs' motion to seal, and grants in part and denies in part Defendant's motion to seal.

The Clerk of the Court is respectfully directed to terminate the motions located at docket numbers 83, 85, 88, 89, 95, 98, 105, and 108.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: March 29, 2016
New York, New York

\*    \*    \*

Plaintiffs are represented by Elizabeth Anne Figueira of Crowell & Moring LLP, 590 Madison Ave., 20th Floor, New York, NY 10022, and Christopher Cole of Crowell & Moring LLP, 1001 Pennsylvania Avenue, N.W., Washington, DC 20004.

Defendant is represented by Thomas H. Curtin of Powley & Gibson, P.C., 304 Hudson St., Suite 202, New York, NY 10013, Robert C. Garrison of Lathrop & Gage LLP, 2345 Grand Blvd., Suite 2200, Kansas City, Missouri 64108, and Petty T. Rader, Munchkin, Inc., 7835 Gloria Avenue, Van Nuys, California 91406.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03-29-16